UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

Angela Marino,

                    Plaintiff,                    CV-06-5972
                                                        (CPS)(CLP)

     - against -                          MEMORANDUM OPINION
                                                      AND ORDER

CNA Insurance Company *doing
business as* American Casualty
Company of Reading, PA,

                    Defendant.

------------------------------------X

SIFTON, Senior Judge.

     Plaintiff, Angela Marino ("plaintiff"), commenced this

action against defendant CNA Insurance Company d/b/a American

Casualty Company of Reading, PA ("American Casualty" or

"defendant") on November 7, 2006.  In a related state court

action, plaintiff obtained a monetary judgment against Saferide

Transportation, Inc., which was insured by American Casualty.  In

this action she seeks satisfaction of that judgment pursuant to

N.Y. Ins. Law § 3420[1], and recovery of remaining first party No-

---

[1] N.Y. Ins. Law § 3420 (2007) provides, in relevant part:

(a) No policy or contract insuring against liability for injury to
person, except as provided in subsection (g) hereof, or against
liability for injury to, or destruction of, property shall be
issued or delivered in this state, unless it contains in substance
the following provisions or provisions which are equally or more
favorable to the insured and to judgment creditors so far as such
provisions relate to judgment creditors:

(2) A provision that in case judgment against the insured or his
personal representative in an action brought to recover damages
for injury sustained or loss or damage occasioned during the life
of the policy or contract shall remain unsatisfied at the

fault benefits, pursuant to N.Y. INS. LAW § 5103.[23]  Now before

this Court is defendant's motion for summary judgment.  For the

reasons set forth below, defendant's motion is granted.

## Background

The following facts are taken from the defendant's Local

Rule 56.1 statement[4] and the parties submissions in connection

---

expiration of thirty days from the serving of notice of entry of
judgment upon the attorney for the insured, or upon the insured,
and upon the insurer, then an action may, except during a stay or
limited stay of execution against the insured on such judgment, be
maintained against the insurer under the terms of the policy or
contract for the amount of such judgment not exceeding the amount
of the applicable limit of coverage under such policy or contract.

[2]  N.Y. INS. LAW § 5103 (2007) provides, in relevant part:

(a) Every owner's policy of liability insurance issued on a motor
vehicle in satisfaction of the requirements of article six or
eight of the vehicle and traffic law shall also provide for; every
owner who maintains another form of financial security on a motor
vehicle in satisfaction of the requirements of such articles shall
be liable for; and every owner of a motor vehicle required to be
subject to the provisions of this article by subdivision two of
section three hundred twenty-one of the vehicle and traffic law
shall be liable for; the payment of first party benefits to:

(1) Persons, other than occupants of another motor vehicle or a
motorcycle, for loss arising out of the use or operation in this
state of such motor vehicle. In the case of occupants of a bus
other than operators, owners, and employees of the owner or
operator of the bus, the coverage for first party benefits shall
be afforded under the policy or policies, if any, providing first
party benefits to the injured person and members of his household
for loss arising out of the use or operation of any motor vehicle
of such household. In the event there is no such policy, first
party benefits shall be provided by the insurer of such bus.

[3]  Defendant has paid only $778.46 on plaintiff's no-fault claim,
leaving $49,221.54 to which plaintiff claims she is entitled.

[4]  Plaintiff has not submitted a 56.1 statement controverting the facts
presented in defendant's 56.1 statement. Although statements in a party's 56.1
are generally "deemed to be admitted unless controverted," by the opposing
party, Local Rule 56.1(c), plaintiff's Affirmation in Opposition to
defendant's motion for summary judgment makes clear that she does in fact
controvert some of the facts in defendant's 56.1 statement.  Plaintiff is on
notice that in this district a party must submit a 56.1 statement in

with this motion.  Disputes are noted.

Adam Drew Sanders, an insurance agent, sought commercial automobile insurance for Saferide Transportation, Inc. ("Saferide") and Deluxe Transit, Inc. through an underwriter with Insurance Professionals, defendant's managing general agent. Saferide represented in an insurance application, signed by Peter Setteducato, its president and CEO,[5] that it was a medical transportation/ambulette company located in Newburgh, New York, which provided non-emergency medical transportation to medical offices (20%), medical centers (15%), hospitals (25%), and nursing homes (40%).  Def. Ex. 1.[6]

Based on this information, defendant issued Commercial Lines Policy BUA 226764253 ("Saferide Insurance Policy") to Saferide. The policy was effective from May 31, 2001 through May 31, 2002. Def. Ex. 2.  The policy includes a $50,000 per accident liability limit.  *Id.*  The named insured was amended, by endorsement

---

connection with a motion for summary judgment.  However, to the extent plaintiff's Affirmation in Opposition disputes facts made in defendant's 56.1 statement, and cites to relevant parts of the record, those facts are deemed controverted.  *See Holtz v. Rockefeller & Co., Inc.*, 258 F.2d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local rules.").  Indeed, as the *Holtz* court noted, "to hold otherwise would risk creating tension between Local Rule 56.1 and Fed. R. Civ. P. 56, which permits a district court to grant an unopposed motion for summary judgment only when it is 'appropriate,' i.e., only when 'the ... admissions on file ... show that ... the moving party is entitled to judgment as a matter of law.'" *Id.* at 74, n.1.

[5]  Peter Setteducato was, at the same time, also the President/CEO of Richmond Car Service, which figures into this motion as noted below.

[6]  "Def. Ex. ___" refers to the exhibits attached to defendant's Statement of Material Facts, dated October 29, 2007.

effective February 22, 2002, to include Nice & Friendly Transportation, Inc. and JFR, Inc., in addition to Saferide and Deluxe.  Def. Ex. 3.

On August 12, 2001, plaintiff sustained personal injuries while exiting a vehicle she hired to take her to a nail salon. As plaintiff was getting out from the vehicle, the driver started the vehicle causing a violent jerk.  Plaintiff was thrown to the ground and dragged a short distance.  According to plaintiff, the driver of the vehicle left the scene of the accident without identifying himself.  Plaintiff was sharing the car with another passenger, who witnessed the accident.

It is undisputed that plaintiff observed a "Richmond Car Service" sign on top of the vehicle, Def. Ex. 6, at 10, and on the day following the accident, she telephoned Richmond Car Service ("Richmond") and notified the person who answered the phone of the accident.  Plaintiff could not recall the make or model of the vehicle, although did recall that it was a gray station wagon.  *Id.* at 6; *see also* Def. Ex. 20; Pl. Ex. C.[7]  The other passenger in the car also described the car as a gray station wagon.  *See* Pl. Ex. F.

Plaintiff's attorneys wrote two letters, dated September 6, 2001 and October 15, 2001, to Richmond advising the car service

---

[7] "Pl. Ex. __" refers to exhibits attached to plaintiff's Affirmation in Opposition, dated November 20, 2007.

of the accident and recommending that Richmond turn the matter over to its insurance company.  Pl. Ex. D.  In a reply dated November 6, 2001, Richmond stated that it "does not own any for hire vehicle affiliated with our base, however we monitor all of our affiliated vehicles and chauffeurs."  *Id.*  Richmond also asked for further information to assist with plaintiff's claim. On November 16, 2001, plaintiff's attorneys responded, providing Richmond with additional details regarding the accident, including the location of the accident and the name of the second passenger in the vehicle.  Plaintiff's attorneys requested that Richmond identify the vehicle involved and provide insurance information.  Richmond apparently did not respond to this letter.

Plaintiff filed a summons and complaint against Richmond d/b/a RPDW, Inc. in New York State Court, Richmond County ("State Court"), on December 11, 2001 ("State Court Action").[8]  Richmond retained Andrew Schultz as its attorney.  On May 15, 2002, the State Court entered an order directing Richmond to produce its "dispatch logs and/or records by June 30, 2002."  Pl. Ex. E. Richmond took several months to do so, and plaintiff questioned the accuracy of the documents eventually produced.  Pl. Ex. F. None of the vehicles identified by Richmond as being on the road on August 12, 2001 matched the description provided by plaintiff

---

[8]  On October 4, 2002, Peter Setteducato submitted an affidavit to the State Court in which he averred that he was the President of RPDW, Inc., d/b/a New Richmond Car Services.

and the other passenger.  In a March 31, 2003 affirmation in
opposition to Richmond's motion for summary judgment, plaintiff's
attorney averred that Peter Setteducato owned Saferide and that
Saferide leased cars for use to RPDW, Inc. d/b/a New Richmond Car
Service.  Pl. Ex. F, ¶ 8.  Plaintiff's attorney undertook a
review of the New York State Department of Motor Vehicle records
for Saferide and identified twenty-nine vehicles registered to
Saferide, including a vehicle matching the description of the
vehicle involved in the accident.  Pl. Ex. F. This vehicle was
covered under the Saferide Insurance Policy.

On April 23, 2003, Richmond, through its counsel, notified
plaintiff that Saferide was the correct name of the offending
vehicle registrant and stipulated to amending the complaint in
the State Court Action to add Saferide as a defendant.  An
amended complaint, filed on April 24, 2003, named Saferide, which
also retained Schultz as its counsel, as a defendant.  Def. Ex.
10.

Saferide thereafter provided American Casualty with notice
of the suit through a letter dated May 9, 2003.  Def. Ex. 11.
This was American Casualty's first notice of the August 12, 2001
accident.  Defendant undertook an investigation into the claim
and hired coverage counsel, who issued an opinion concerning
disclaimer on July 2, 2003.  On July 29, 2003, American Casualty
notified Saferide that it denied coverage because Saferide failed

to comply with certain provisions of its policy.  Def. Ex. 12.

Saferide thereafter, on September 30, 2003, impleaded American Casualty in the State Court Action.  In its third-party complaint, Saferide alleged that American Casualty owed coverage to both Saferide and Richmond because they were a single entity and because Saferide operated under the Richmond trade name.  Def. Ex. 13.  The third-party action against defendant was dismissed by stipulation on October 18, 2004.  Defendant contends that Saferide dismissed the action after defendant advised Saferide that it planned to raise fraud and misrepresentation claims and defenses[9] against Saferide.  The stipulation states only that the third-party complaint was dismissed without prejudice.  Def. Ex. 15.

In a November 18, 2004, letter, plaintiff's counsel wrote to Andrew Schultz, counsel for both Richmond and Saferide, that "my belief is that coverage in this matter should be afforded by the insurance carrier for Richmond Car Service . . ."  Def. Ex. 16. He continued:

> "It is also my understanding that you have no desire to proceed further in the defense of this matter . . . Therefore, I would respectfully request that you

---

[9] Defendant contends that, during discovery in the State Court Action, it learned Saferide was not a medical transportation company operating out of Newburgh, N.Y., but rather a taxi/car service providing transportation to individuals on Staten Island.  *See* Def. Statement of Material Facts, Oct. 29, 2007, ¶ 29.  Defendant also notes that Saferide, Peter Setteducato, Saferide's and Richmond's CEO, and Adam Drew Sander are named defendants in two other lawsuits brought by additional insurance companies alleging fraud in the procurement of commercial automobile insurance policies.  *See*, *e.g.*, Def. Ex. 14.

> consider withdrawing the Answer you have interposed on
> behalf of Richmond Car Service, allowing us to note
> their default, allowing us to take an Inquest . . . and
> obtain a Judgment.  We will then use that Judgment in
> our efforts to obtain coverage from [American
> Casualty]."

*Id.*  This letter ("November 18, 2004 letter") was copied to American Casualty.

Plaintiff thereafter moved, on January 14, 2005, to strike Saferide's answer in the State Court Action for failure to respond to three discovery orders issued by the State Court.  The final order had required discovery be completed by January 5, 2005.  Saferide[10], by Mr. Schultz, did not oppose the motion and its answer was accordingly struck and default entered on February 15, 2005.  An inquest was held and, on March 3, 2006, plaintiff obtained a judgment against Richmond and Saferide in the State Court Action in the amount of $125,000 plus $3,760.04 in costs. Pl. Ex. A.

On September 7, 2007, Plaintiff served American Casualty with the judgment, together with notice of entry.  Pl. Ex. B. American Casualty has not paid the judgment or costs.

## Discussion

A.  <u>Standard For Summary Judgment</u>

A court must grant a motion for summary judgment if the

---

[10]  Defendant contends that Saferide's failure to oppose the motion, and the subsequent entry of judgment, was part of an agreement between plaintiff's attorney and Schultz to allow default to be entered against Saferide when it became clear that plaintiff could not recover against Richmond.

movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id*.

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a "metaphysical doubt" as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900

F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). In deciding such a motion the trial court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

Defendant argues, in support of its motion for summary judgment, that there are no genuine issues of material fact with respect to the following, any one of which requires summary judgment be granted in its favor:

> 1) Richmond was not an insured under the Saferide Insurance Policy; and/or
> 2) Richmond and Saferide's failure to comply the Saferide Insurance Policy's provisions preclude plaintiff's attempt to the satisfy the judgment; and/or
> 3) Plaintiff is precluded from satisfying her judgment against defendant due to the doctrine of unclean hands based upon her perpetuation of Safeway's and Richmond's material misrepresentations.

As defendant's second argument is dispositive, for the reasons discussed below, I need not consider the other two.

B. <u>Defendant's Disclaimer Due To Saferide's Failure To Comply With The Terms And Conditions Of The Saferide Insurance Policy Is Effective</u>

Defendant argues that Saferide failed to comply with the

terms of the Saferide Insurance Policy and, because plaintiff

stands "in the shoes of the insured", plaintiff cannot recover

due to this failure.  Specifically, defendant argues that

Saferide did not give defendant timely notice of the accident,

provide necessary information, or cooperate with defendant's

investigation into the claim, as required by the policy, and

defendant therefore effectively disclaimed coverage.  Plaintiff

puts forth two arguments for why the disclaimer is ineffective.

First, she argues defendant's eighty-one day delay in issuing its

disclaimer is unreasonable as a matter of law.  Second, she

contends that she made sufficient efforts to effect proper

notice.

    i.  *Delay of Disclaimer Was Reasonable*

N.Y. Ins. Law § 3420(d) provides, in relevant part:

> If under a liability policy delivered or issued for
> delivery in this state, an insurer shall disclaim
> liability or deny coverage for . . . bodily injury
> arising out of a motor vehicle accident or any other
> type of accident occurring within this state, it shall
> give written notice as soon as is reasonably possible
> of such disclaimer of liability or denial of coverage
> to the insured person or any other claimant.

Once an insurer "has sufficient knowledge of facts entitling it

to disclaim, or knows that it will disclaim coverage, it must

notify the policyholder in writing as soon as is reasonably

possible." *First Fin. Ins. Co. v. Jetco Contr. Corp.*, 1 N.Y.3d

64, 66 (2003).  An "insurer's failure to provide notice as soon

as is reasonably possible precludes effective disclaimer, even

though the policy holder's own notice of the incident to its insurer is untimely." *Id*. at 67; *see also Mount Vernon Fire Ins. Co. v. Harris*, 193 F. Supp.2d 674, 676-77 (E.D.N.Y. 2002) (interpreting New York law).

While "[t]he issue of whether a disclaimer was unreasonably delayed is generally a question of fact," *Mount Vernon Hous. Auth. v. Pub. Serv. Mut. Ins. Co.*, 267 A.D.2d 285, 286 (2d Dep't 1999) (citing cases), certain unexplained delays or justifications for delays can be ruled upon as a matter of law. The New York Court of Appeals has held that unexplained delays of 62 and 48 days are unreasonable as a matter of law. *Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028 (1979) (62 days); *Jetco*, 1 N.Y.3d at 70 (2003) (48 days). The Appellate Division has found periods of less than 48 days unreasonable as a matter of law. *Jetco*, 1 N.Y.3d at 70 (citing cases). An insurer who delays in disclaiming coverage bears the burden of justifying the delay. *Id.* at 69.

"[A]n insurer's general need to conduct . . . investigations in a thorough manner constitutes a sufficient reason for delayed notification." *New York Univ. v. First Fin. Ins. Co.,* 322 F.3d 750, 754 (2d Cir. 2003); *see also Harris*, 193 F. Supp.2d at 677 (granting summary judgment because "a prompt, good faith investigation of the claim by the insurer may justify a delay that would normally be deemed unreasonable absent explanation");

*Jetco*, 1 N.Y.3d at 69 ("investigation into issues affecting an insurer's decision whether to disclaim coverage obviously may excuse delay in notifying the policyholder of a disclaimer").

Such an investigation will not excuse delay in disclaiming when "the basis for denying coverage was or should have been readily apparent to the insurer even before the onset of the delay." *New York Univ.*, 322 F.3d at 755. Put another way, when "any added information that the insurer could have learned from further investigation did not affect the insurer's decision to deny coverage in the first place, any delay in notification based on such extra investigation is unreasonable as a matter of law." *Id.* (citing cases); *Jetco*, 1 N.Y.3d at 69 (delay to explore additional sources of insurance for the insured, which was not related to insurer's decision to disclaim, cannot be excused).

In this case, defendant received notice of the claim on May 9, 2003. It disclaimed liability on July 29, 2003, eighty-one days after receiving notice of the claim.[11] Defendant disclaimed as to Saferide because Saferide's failed to comply with Section IV, Part A.2 of the Saferide Insurance Policy, which, in general

---

[11] Defendant argues that the its time to disclaim coverage should run from the day it received its disclaimer opinion from counsel, on July 2, 2003. Defendant, however, has provided no information from which I can determine what role, if any, the opinion, or facts contained therein, played in defendant's decision to disclaim. For the reasons set forth below, I do conclude, however, that defendant did not have sufficient facts entitling it disclaim on May 9, 2003, the day it received notice from Saferide. Because I determine that defendant's delay of some period less than eighty days was reasonable as a matter of law I need not pinpoint the date when defendant did have sufficient facts to disclaim with specificity, which the record does not permit me to do.

terms, required Saferide to provide to defendant prompt notice of any accident or claim and information related to the claim and to cooperate with the investigation.[12]  Contrary to plaintiff's assertions, the reasons for disclaiming coverage as to Saferide were not apparent to the defendant on the face of the claim.

Plaintiff's Verified Complaint, which was served upon Saferide on April 28, 2003, alleged, upon information and belief, that Saferide was doing business as Richmond and vice versa. Def. Ex. 10, ¶¶ 9-11.  The Verified Complaint also alleged that Saferide owned the offending vehicle, dispatched it to pick up plaintiff, and permitted the driver to operate it.  *Id.* at ¶¶ 13-15.  Plaintiff, in separate paragraphs, alleged the same facts against Richmond and Saferide.  *See, e.g., id.* at ¶¶ 22-23 (alleging, in ¶ 22, that Richmond owned the vehicle and, in ¶ 23, that Saferide owned the vehicle).

Initially, given plaintiff's conflicting allegations concerning the vehicle's ownership and the relationship between Saferide and Richmond, it would not have been clear to defendant when Saferide had knowledge of the accident and whether it had timely notified defendant.  Moreover, Saferide was, at the time, claiming to be doing business as Richmond, though it was registered as an ambulette company in Newburgh.  Defendant's

---

[12]  The disclaimer as to Richmond, even though the rationale that Richmond was not an insured would have been immediately apparent to defendant upon receipt of the Verified Complaint in the State Court Action, is irrelevant.

investigation into the relationship between the entities was a reasonable attempt to resolve these issues. Additionally, the investigation, as plaintiff's own efforts to identify the owner of the vehicle demonstrated, would likely have been hampered by the substantial confusion (perhaps intentionally created by Richmond and Saferide or their principal Peter Setteducato) concerning the corporate relationship between Richmond and Saferide. Further, Saferide's counsel does not appear to have been responsive to defendant's inquiries, as it was not until July 9, 2003 that he communicated to defendant a detailed explanation for Saferide's delay in notifying defendant. Worbetz Aff. ¶ 12(e). Additionally, defendant could not have known, on May 9, 2003, that Saferide would not cooperate in defendant's investigation into the claim and refuse to provide necessary information. Thus, I conclude that the reasons for disclaiming were not readily apparent on the face of the State Court Complaint and that the investigation was diligently conducted. *Those Certain Underwriters at Lloyds, London v. Gray*, ---N.Y.S.2d ----, 2007 WL 3380450, at *2 (1st Dep't Nov. 15, 2007).

As the *Harris* court noted, there is "no point in discouraging insurers from conducting thorough investigations before disclaiming coverage, as long as they are not used as a dilatory tactic." *Harris*, 193 F. Supp.2d at 678. There is no indication that defendant was purposefully delaying. Moreover,

"'piecemeal denials of coverage would frustrate [the insurer's] right to investigate claims.'" *Id*. (quoting *Wilczak v. Rude & Capozzi, Inc.*, 203 A.D.2d 944, 945 (4th Dep't 1994)). For these reasons, and because defendant's investigation was related to the stated reasons for disclaiming, the investigation is an adequate justification for defendant's delay.

    ii.  *Plaintiff's Efforts to Effect Notice Do Not Render Disclaimer Ineffective*

Plaintiff contends that, because there is a factual issue as to whether her efforts to effect proper notice[13] "were sufficient in light of the opportunities to do so afforded [her] under the circumstances," and because such efforts, if sufficient, would render the disclaimer for untimely notice ineffective, summary judgment should be denied.[14] In support of her argument, plaintiff cites *Cirone v. Tower Ins.* Co., 39 A.D.3d 435 (1st Dep't 2007) and *Allstate Ins. Co. v. Marcone*, 29 A.D.3d 715, 718 (2d Dep't 2006) but they are inapposite, as the insurers in those cases disclaimed only on the basis of untimely notice.[15] Defendant disclaimed, however, for reasons beyond untimely notice, including Saferide's refusal to cooperate with

---

[13] Plaintiff never directly notified defendant of her claim.

[14] Plaintiff's contention that Saferide's notice might have been timely further undercuts her argument that the reasons defendant asserted for disclaiming coverage were apparent to defendant from the State Court Complaint.

[15] *Denneny v. Lizzie's Buggies, Inc.*, 306 A.D.2d 89 (1st Dep't 2003) is also distinguishable as plaintiff in that case directly notified the insurer.

defendant's investigation and provide requested information. Plaintiff does not demonstrate that there are any questions of fact as to the validity of these additional reasons.

Because I grant defendant's motion for summary judgment for the reasons stated above, I need not consider the other arguments defendant has raised.

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment is granted. The Clerk is directed to enter judgment in favor of defendant and transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

Dated :    Brooklyn, New York
           April 16, 2008

                    By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                        United States District Judge